**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:CR-19-328** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANTHONY HASKINS** | : | |

## MEMORANDUM

### I.    Introduction

This case, which comes before us on a motion to reconsider an order denying the defendant pretrial release, raises profound questions which lie at the intersection of science, public health, criminal justice and the law. The case also concerns important issues on the cutting edge of the current COVID-19 pandemic, and calls upon us to reconcile competing public and private interests relating to a request for the release of a criminal recidivist who is awaiting trial on grave federal firearms and drug trafficking charges. These concerns arise in a very specific factual context, where the defendant is now housed in a facility that has experienced a significant outbreak of coronavirus.

Recognizing the gravity of these issues, and the unusual factual, legal and epidemiological context of this case, we have provided the defense with every opportunity to develop a factual record in support of the defendant's motion for temporary release, conducting two evidentiary hearings on this motion and securing

extensive testimony from the Director of the Dauphin County Prison, where Haskins is now being held. Having afforded Haskins with this full and fair opportunity to develop his claims, we find that Haskins' motion to reconsider should be denied. As discussed below, Haskins' motion fails on at least three separate grounds: First, it is undisputed that Haskins has no medical conditions which raise particular COVID-19 susceptibility concerns beyond those facing the public at large. Second, Haskins' current criminal charges and extensive record of criminal recidivism spanning three decades underscore that the plaintiff presents a danger to the community and risk of flight. Third, given the evidence regarding the multi-facetted and on-going efforts to mitigate the spread of COVID-19 within the Dauphin County Prison, Haskins' current conditions of confinement, while doubtless difficult, do not constitute a "compelling reason" which overcomes the presumptions that otherwise apply as a matter of law and would justify the defendant's release.

This case comes before us for reconsideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i). On April 24, 2020, we denied the defendant's motion for pretrial release, in which the defendant asserted that the COVID-19 pandemic

justified his temporary release from pre-trial detention, given the dangers of infection which may result from close confinement in a custodial setting. (Doc. 30). On this score, we found that Haskins' concerns regarding the COVID-19 virus were speculative, as he did not assert that he suffers from a medical condition which makes him more susceptible to the virus. Moreover, Haskins' criminal record spanned over two decades and included drug and firearms charges, as well as fleeing and eluding the police.

The instant motion for reconsideration does not dispute our prior findings, but instead focuses on the recent outbreak of COVID-19 at the Dauphin County Prison, where Haskins is incarcerated, and argues that Mr. Haskins is now at a greater risk of contracting the virus due to the prison's inability to follow the CDC safety guidelines and precautions. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We continue to acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. We additionally acknowledge the reality that the Dauphin County Prison has had a recent outbreak of COVID-19 cases, and thus some inmates in the facility may now be at a greater risk of contracting the virus. In

addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below, it is ordered that the motion for reconsideration is DENIED.

## II.   Factual Background and Procedural History

As we outlined in our prior memorandum opinion denying the defendant's motion for pretrial release, Haskins was charged on November 13, 2019 with distribution of cocaine and cocaine base, possession of firearms during drug trafficking and possession of firearms by a previously convicted felon in violation of 21 U.S.C. § 841 and 18 U.S.C. §§ 924 (c) and 922(g). This indictment also placed Haskins on notice that he was subject to enhanced criminal penalties due to his criminal recidivism, including his prior conviction for serious drug offenses. Initial proceedings and a detention hearing were then conducted in this case on November 19, 2019. At that time, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the

community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: We noted that Haskins was subject to two statutory presumptions in favor of detention based upon the drug and firearms charges pending against him. We also found that Haskins had a lengthy criminal record marked by drug offenses and violence, had been non-compliant with supervision in the past, had an extensive history of illicit drug use and possession, and faced a lengthy term of imprisonment if convicted. On April 24, 2020, we reaffirmed these findings when we denied Haskins' initial motion seeking temporary release.

Since our prior ruling, nothing has altered the immutable facts concerning Haskins' health, history of recidivism, and potential risk of flight or danger to the community. On this score, Haskins' personal history and background combine to create at least three insurmountable obstacles to his request for release.

First, as discussed below, in this setting a pretrial detainee who is seeking release from custody must typically show at a minimum that his health conditions create a particularized risk should he become infected with the coronavirus. In this case, it is entirely undisputed that Haskins has identified no such medical concerns or conditions.

Second, the charges currently lodged against Haskins, which include both drug trafficking and firearms offenses, trigger two separate statutory presumptions in favor of his continued detention. Thus, Haskins must overcome these dual presumptions in favor of his detention in order to obtain relief.

Third, the charges that trigger these statutory presumptions in favor of Haskins' continued detention are but the latest chapters in a history of criminal recidivism which spans nearly three decades. Between 1994 and 2018, Haskins has incurred no less than 11 prior criminal convictions. These criminal cases resulted in convictions that run the gamut from numerous drug distribution and possession charges, to fleeing and eluding police in an episode that resulted in damage to a vehicle, firearms charges, hindering apprehension, and escape. Haskins has also been charged, but not convicted, of aggravated assault.[1]

The instant motion for reconsideration of temporary release does not focus upon or directly challenge any of these initial detention findings or determinations.

---

[1] We note one other factor, peculiar to Mr. Haskins, which further heightens our concern that he would comply with any conditions of release. At the close of the most recent hearing in this case, Mr. Haskins interrupted, demanding the opportunity to make his own supplemental presentation without consulting with his counsel. We denied this request, and instructed Haskins to speak to his counsel about these matters, but for several minutes he refused to follow our instructions, seeking in a haphazard fashion to fire his counsel and represent himself in this motion. Haskins' inability or unwillingness to follow our instructions gives us great pause regarding whether we could rely upon him to obey any conditions of release.

Instead, the defendant's motion for release rests upon the recent outbreak of COVID-19 at Dauphin County Prison, where he is currently incarcerated. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Beyond this concern of a recent outbreak, the defendant cites scant information which would provide a basis for a finding that he possesses specific and individualized factors which heighten these medical concerns in the instant case.

In order to address these concerns, we secured extensive testimony from Brian Clark, the Director of the Dauphin County Prison. Mr. Clark has more than two decades of managerial experience in county corrections and provided detailed testimony outlining the extensive, multi-facetted, and good faith efforts to address and control COVID-19 outbreaks at this facility. Towards this end, the county has made more than $200,000 in purchases for equipment, sanitizers, cleaning supplies, masks, gloves, and garb designed to curb the spread of the virus. The facility staff have distributed CDC guidance and materials to both inmates and staff., and has adopted masking and cleaning protocols consistent with this public health guidance. The prison has also twice conducted comprehensive COVID-19 health screening of all inmates and staff, and engaged in a third, partial COVID-19 testing. The institution has in place quarantine procedures for newly admitted prisoners and has

isolation regimens in place for those inmates who have tested positive for the coronavirus.

While Mr. Clark candidly acknowledged the fundamental truth that none of us can anticipate the course, scope and direction of this pandemic, his testimony detailed a comprehensive program that is in place at the prison to address and mitigate these health concerns. As a result of these efforts, according to Mr. Clark, there have been only two instances of positive COVID test results in the housing unit where Haskins is detained. Further, of the approximately 200 positive test results, virtually all cases have been entirely asymptomatic, only three cases have required hospitalization, and none have resulted in fatalities. Moreover, notably, Mr. Clark's testimony also rebutted some of the specific factual claims made by the defendant, Mr. Haskins. For example, Haskins described a complete and on-going failure to maintain restrooms in his housing unit, but institutional repair records revealed that numerous repairs have been performed on these facilities. In addition, Mr. Clark testified that Haskins has never provided prison officials with grievances concerning many of the issues raised by the defendant in this motion.

Given this evidence, the Government opposes this motion to reconsider, arguing that Haskins has not carried his burden of proof and persuasion under § 3142(i) to justify temporary release. As discussed below, we agree and will deny this motion.

III.   **Discussion**

A. **Temporary Release Under 18 U.S.C. § 3142**

While cast as a motion seeking reconsideration of an order denying temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).

> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

<u>United States of America v. Cox</u>, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." <u>United States v. Suppa</u>, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until

10

recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For

example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54,

2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the Court of Appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original

decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

On this score, with respect to the specificity of the defendant's concerns, courts across the country have very recently had occasion to consider situations similar to the instant case, in which there have been outbreaks of COVID-19 throughout correctional facilities. In these cases, courts have continued to take an individualized approach, granting release to inmates who show that they have "a sufficiently serious medical condition, or advanced age, placing the prisoner at a

14

uniquely high risk of grave illness or death if infected by COVID-19." United States v. Somerville, -- F.Supp.3d --, 2020 WL 2781585, at *8 (W.D. Pa. May. 29, 2020). In addition, in order for the court to grant release, there must be a real, non-speculative risk of exposure to the virus in the facility where the defendant is held. Id.

Thus, in the compassionate release context, courts have granted release to prisoners who have demonstrated that serious medical conditions that place them uniquely at risk of contracting the virus and are incarcerated in facilities that have had severe outbreaks of COVID-19. See e.g., Somerville, 2020 WL 2781585 (granting release to an inmate with hypertension, hyperlipidemia, chronic bronchitis and asthma in a facility described as a "hotbed of COVID-19"); United States v. Coles, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to an inmate with hypertension, prostate issues, and bladder issues, where there were 100 confirmed COVID-19 cases in the facility and the prisoner did not present a danger to the community). However, release has been denied in cases in which the inmate failed to show that he was at a unique risk for contracting the virus, even where the facility in which he was incarcerated experienced an outbreak of COVID-19. See United States v. Cunningham, 2020 WL 3791466 (C.D. Ill. July 7, 2020); see also United States v Price, 2020 WL 3429167 (W.D. Pa. June 23, 2020) (denying compassionate release where inmate could not show a serious medical condition).

Specifically, the <u>Cunningham</u> court held that although the facility had approximately one hundred confirmed cases of COVID-19, the "[d]efendant is only 33 years old and has no health issues that increase the risk that COVID-19 poses," and that the defendant's history of violating Bureau of Prisons' rules weighed against him in consideration of his motion for release. <u>Id.</u>, at *2.

Additionally, we have found at least one state court decision granting temporary pretrial release to eighteen inmates who demonstrated a serious medical risk of being incarcerated in a facility with almost five hundred confirmed cases of COVID-19. <u>See</u> <u>People ex rel. Stoughton v. Brann</u>, 122 N.Y.S.3d 866 (Supreme Court, New York County, April 6, 2020). Significantly, however, the New York County court declined to release those inmates who had not demonstrated advanced age or medical conditions that placed them at a higher risk of contracting the virus. <u>Id.</u> at 872 (noting that these inmates "have nothing beyond [age] to suggest that they are in more danger than the average inmate").

It is against these legal benchmarks that we evaluate the instant request for reconsideration of temporary release from custody.

### B. **The Defendant's Motion for Temporary Release Will Be Denied.**

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to

carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

As we explained with respect to Mr. Haskins' first motion for temporary release, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, the defendant is 44 years old and does not assert that he suffers from any medical conditions that place him at a higher risk of contracting COVID-19. However, the most recent reports from the United States Marshal's Service indicate that there have been approximately 200 confirmed cases of COVID-19 between inmates and staff at DCP in the recent months. Thus, we recognize the gravity of the situation at DCP, but we must still weigh these concerns

against the substantial public safety considerations which led us to order the defendant's detention in the first instance.

In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: Haskins has a lengthy history spanning a quarter of a century marked by repeated criminal episodes. These criminal cases have entailed drug trafficking and firearms offenses, assault, escape, fleeing, and eluding. Haskins also faces current drug trafficking and firearms charges which trigger two separate presumptions that he presents a danger to the community. Thus, the public safety concerns which animate any decision under the Bail Reform Act continue to weigh heavily in favor of the defendant's detention pending trial.

We have considered the release plan proposed by Mr. Haskins, which would involve his release to a third party custodian who has pledged to ensure his compliance with release and public health constraints. While we completely accept the good faith of the proffered third party custodian, we note that in the final analysis it is Ms. Haskins' good faith that we must rely upon in making a release determination. Regrettably, the defendants' protracted criminal history, current criminal charges, and conduct in the course of these proceedings gives us little confidence that the proposed third party custodian could exercise the requisite

degree of control and restraint over the defendant to overcome the multiple presumptions in favor of detention.

Moreover, to the extent that the defendant attempts to assert that the prison's response to the COVID-19 pandemic constitutes an exceptional circumstance that warrants release under § 3142(i), we disagree. To the contrary, in a second hearing on this motion, we received testimony from the Director of Corrections at DCP.[2] Director Clark testified at great length—for almost two hours—about the precautions being taken at DCP to combat the outbreak and spread of COVID-19 in accordance with CDC protocols. These precautions include separate isolation, or "quarantine" units, in which inmates who test positive for COVID-19 and inmates who come in contact with those inmates are placed, away from the general population; mass testing of all inmates and staff members in the facility; weekly orders of cleaning solution and personal protective equipment (PPE) to distribute to inmates and staff; Clorox 360 cleaning machines, which are used to clean the facility daily; and a lockdown status at the prison, in an attempt to keep inmates and staff from being exposed to a greater number of individuals throughout the facility.

---

[2] We note that the defendant was given an exceptional opportunity in this case, over a strong objection by the United States, in which we permitted the opportunity to take Director Clark's testimony on the issue of DCP's response to the recent COVID-19 outbreak at the facility. This request was granted only after it was noted that the defendant's testimony during the first hearing regarding the procedures at DCP contradicted an affidavit prepared by Director Clark.

Thus, contrary to the defendant's assertions, the Director and his staff have endeavored to take the precautions that the CDC recommends in order to combat this novel virus in a custodial setting where these precautions and guidelines are necessarily present great challenges. Accordingly, it is clear that the prison's response to the COVID-19 pandemic is not an exceptional circumstance that would warrant Haskins' release, but rather a calculated and responsible approach to a novel virus that has taken the world by storm and about which the information and guidelines change on a weekly, if not daily, basis.

Given the remedial steps being undertaken by the Dauphin County Prison, Haskins' claims that he is being held under conditions which violate his due process rights also simply fail. In this regard, we remind Haskins that we have previously found that:

> [A] pretrial detainee's claims regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is "whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Davis v. City of Philadelphia, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018); Umarbaev v. Lowe, 2020 WL 1814157 (M.D. Pa. April 9, 2020) (Kane, J.). On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. United States v. Salerno, 481 U.S. 739, 742 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. See Bell, 441 U.S. at 539; Habbard, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, ... if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental

objective, it does not, without more, amount to 'punishment.' " <u>United States v. Cook</u>, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting <u>Bell</u>, 441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the virus. <u>See e.g., Cook</u>, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); <u>United States v. Frost</u>, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020); United States v. Leake, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); <u>United States v. Stevens</u>, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

<u>United States v. Haskins</u>, No. 1:CR-19-328, 2020 WL 1974414, at *5–6 (M.D. Pa. Apr. 24, 2020). Therefore, in the face of the efforts being made at the prison to ensure the safety of prisoners and staff, this due process claim also fails.

In sum, while we recognize the dangers posed by the global pandemic, particularly in the prison context, we also recognize that the "existence of some health risk to every [] prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" <u>United States v. Roeder</u>, 807 F. App'x 157, 161 n. 16 (3d. Cir. 2020). Accordingly, we find that the defendant's lack of serious medical conditions, combined with his extensive criminal history, weigh in favor of his continued detention, and we will deny the motion for reconsideration.

## IV.   <u>Conclusion</u>

Weighing and balancing these countervailing considerations, we conclude that the defendant's motion for reconsideration will be DENIED. "Because the Court

21

is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 5th day of August 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge